UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD LOWE, #172332,

       Plaintiff,

                                            Case No. 13-10058
v.                                         Hon. Terrence G. Berg
                                            Mag. Judge Laurie Michelson

PRISON HEALTH SERVICES, *et al.*

       Defendants.
_____/

**REPORT & RECOMMENDATION ON DEFENDANT SUSAN MCCAULEY'S MOTION FOR SUMMARY JUDGMENT [19]**

      This is a *pro se* prisoner civil rights action in which Plaintiff Donald Lowe alleges that while incarcerated at the Saginaw Correctional Facility ("SRF"), Prison Health Services (PHS), Dr. Adam Edelman, and registered nurse Susan McCauley violated his Eighth and Fourteenth Amendment rights when they were deliberately indifferent to his serious medical needs by denying his requests to be treated by an outside medical specialist. (Dkt. 1, Compl.) All pre-trial proceedings have been referred to this Court. (Dkt. 6.) This matter is presently before the Court on Defendant Susan McCauley's ("McCauley") Motion for Summary Judgment. (Dkt. 19.) For the reasons set forth below, this Court recommends that the motion be GRANTED.

1

**I.     BACKGROUND**

    **A.     Plaintiff's Allegations**

Plaintiff alleges that in 2000, while housed at the SRF, he had serious medical problems with a swollen neck, which led to difficultly swallowing. (Dkt. 1, Compl. at 2.) Plaintiff kited to see the prison doctor about his neck and was seen by Dr. Joseph Burtch. (*Id*.) Upon examination, Dr. Burtch placed a consultation request referral into PHS for Plaintiff to see an endocrinology specialist. (*Id*.) The consultation request was granted and Plaintiff saw Dr. Orlandi at the Duane Waters Hospital in Jackson, Michigan. (*Id*.) After performing numerous tests (including a CT scan, blood tests, thyroid stimulating hormone (TSH) test, and an ultrasound), Dr. Orlandi diagnosed Plaintiff with multi-nodular goiter, with a diffusely enlarged thyroid. (*Id*.)

In 2004, Plaintiff was transferred to the Robert Cotton Correctional Facility and, five months later, to the Mound Correctional Facility. (*Id*. at 2-3.) Upon his arrival at the Mound Correctional Facility, Plaintiff was seen by the prison doctor there. (*Id*. at 3.) Plaintiff alleges that he "complained" for two-to-three years about his goiter and thyroid concerns, and that he needed to see an endocrinology specialist, "but to no avail." (*Id*.)

On July 18, 2008, Plaintiff was taken to the emergency room at Detroit Receiving Hospital where he was diagnosed as having an enlarged thyroid. (*Id*. at 3.) The discharge notes indicate a conversation with Dr. Middlebrook who indicated that if the emergency room doctor "made it clear on the discharge instructions that [Plaintiff] needs endocrinology follow up, as well as ultrasound[,] [t]his will be able to be managed as an outpatient . . . This patient is being discharged." (*Id*. at 3-4.)

Plaintiff was then transferred from the Mound Correctional Facility to the Brooks Correctional Facility, where he was again seen by Dr. Orlandi, the endocrinology specialist. (*Id.* at 4.) Dr. Orlandi prescribed Tapazole and requested Plaintiff to follow-up in 12 weeks from July 22, 2009. (*Id.*)

Shortly thereafter, Plaintiff was transferred back to the Saginaw Correctional Facility and was seen by Dr. Burtch on September 11, 2009. (*Id.*) At this visit, Plaintiff requested an offsite visit to see Dr. Orlandi in the next two months. (*Id.*) On September 16, 2009, Dr. Adam Edelman denied this request indicating that Plaintiff would be treated onsite as appropriate. (*Id.*; *see also* Ex. F, Edelmen Denial.)

On January 28, 2010, after being examined by Dr. Parveen Malik, Plaintiff made a second consultation request (referral) to Prison Health Services (PHS) to see Dr. Orlandi, within four weeks of January 28, 2010. (Dkt. 1, Compl. at 4.) Dr. Malik described signs and symptoms of Plaintiff's diagnosis and supporting history:

> Patient has a [history] of Bilateral Multinodular Goiter and was seen by Endocrinologist on July 22, 2009 at Duane Waters Hospital (DWH) clinic by Dr. Orlandi, (Endocrinologist) and [follow-up] after 3 months was recommended. Patient was placed on Tapazole 5 Mg three times per week. Patient has been []taking that since that time and his Goiter size has not improved and <u>gotten worse</u> recently. Now he is complaining of difficulty swallowing & breathing problems at night, laying on his back wakes him up choking.

(Dkt. 1, Compl. at 4-5) (emphasis in original).

On February 4, 2010, PHS denied the consultation request to see Dr. Orlandi. (*Id.*; *see also* Ex. H, PHS Denial.)

3

In April 2010, Plaintiff was transferred to Cooper Street Correctional Facility ("JCS"), where he continued to complain about his thyroid condition. (*Id.*) On December 8, 2011, and March 14, 2012, Plaintiff sent health care kites regarding his thyroid condition; specifically that he was having problems swallowing and breathing. (*Id.*) Despite his requests, Plaintiff has not seen endocrinology specialist Dr. Orlandi since his July 22, 2009 visit.

On November 23, 2009, Plaintiff filed a step I grievance where he claimed deliberate indifference to his serious medical needs, in violation of the Eight Amendment. (*Id.* at 5-6; *see also* Ex. K, step I grievance.) On December 7, 2009, he received a step I grievance response from Defendant McCauley (who also functioned as the Correctional Facility Health Unit Manager (HUM) in Saginaw) and M. Zamora. It stated that their investigation revealed that Plaintiff had been seen by the medical provider on September 11, 2009, a consult request was placed for endocrinology specialist follow-up, but on September 16, 2009, after review by the Utilization Review representatives, it was recommended to treat Plaintiff onsite as appropriate, and the follow-up was not approved. (Compl. at 5-6; *see also* Ex. L, response to step I grievance). On December 22, 2009, Plaintiff filed a step II grievance appeal, stating that the step I grievance response was not acceptable. (Dkt. 1, Compl. at 6, Ex. M, step II grievance appeal.) On January 7, 2010, Plaintiff's appeal was denied, and the investigation determined that Plaintiff's issues were appropriately addressed at step I. (Dkt. 1, Compl. at 6, Ex. N, step II grievance response.) The step II response further indicated that Plaintiff will continue to be monitored onsite by the facility medical provider for his thyroid condition. (*Id.*) On March 9, 2010, Plaintiff filed a step III grievance appeal to the director's office at P.O. Box 30003, Lansing, MI, but has not received a response to his step III

4

appeal.  (Dkt. 1, Compl. at 6; *see also* Ex. O, step III appeal).  Plaintiff filed this lawsuit on January 8, 2013.  (Dkt. 1, Compl.)

## II.   ANALYSIS

On April 1, 2013, Defendant McCauley filed a Motion for Summary Judgment.  (Dkt. 19.)  In it, McCauley argues that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit as required by the Prison Litigation Reform Act .  (*Id*. at 2-7.)  McCauley also argues that Plaintiff failed to allege sufficient personal involvement to establish liability as to her under § 1983 (*id*. at 7-10) and that she is shielded from liability insofar as her conduct does not violate any of Plaintiff's clearly established statutory or constitutional rights (*id*. at 11-15).

### A.   Motion for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material only if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).  The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."

*Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law.  *Anderson*, 477 U.S. at 252 ).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

### B.     Exhaustion

Plaintiff alleges that he filed a grievance and all appropriate appeals in connection with his claim that Defendants (including McCauley) acted with indifference to his serious medical needs. McCauley claims that Plaintiff did not exhaust his administrative remedies because he failed to file the required step III grievance appeal before he filed this lawsuit as required by the Prison Litigation Reform Act ("PLRA").  (Dkt. 19, Def.'s Mot. Summ. J. at 2-7.)

The PLRA bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available."  42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  The exhaustion requirement is justified on two grounds.  First, it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Woodford v. Ngo*, 548 U.S. 81, 94 (2002).  Additionally, the requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 549 U.S. at 204.

The exhaustion prerequisite applies to all inmate suits about prison life, regardless of the nature of the wrong or the type of relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (rejecting claim that prisoner had no duty to exhaust where monetary damages could not be awarded through the administrative process; reasoning that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."). Moreover, the prisoner must "properly" exhaust his claims by complying with the MDOC grievance policy. *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."); *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted. . . . [and] must adhere to any time limitations that are part of the institutional grievance policy.") (citing *Jones Bey v. Johnson*, 407 F.3d 801, 803 n.2 (6th Cir. 2005), *rev'd on other grounds by Jones v. Bock*, 549 U.S. 199 (2007))).

It is not, however, a prisoner's burden to show that he has properly exhausted his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, the failure to exhaust is an affirmative defense, *Jones*, 549 U.S. at 216, and a defendant to a prisoner suit has both the burden of production and persuasion on the issue of non-exhaustion. *Surles*, 678 F.3d at 455-56. As such, a defendant's "initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles*, 678 F.3d at 455-56 (internal quotation marks and citation omitted). "Summary judgment is appropriate only if defendants establish the

absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

Here, the focus is on whether Plaintiff exhausted his administrative remedies by properly filing a step III grievance. McCauley cites the administrative policy applicable to Plaintiff's claims that requires Lowe to exhaust his administrative remedies through step III before filing his § 1983 action. (Def.'s Mot. Summ. J. at 5) (quoting MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007)). In support, McCauley also attaches the affidavit of Richard Russell, manager of the Grievance Section of the Michigan Department of Corrections (MDOC) in Lansing, Michigan. (Dkt. 19, Ex. B, Russell Aff.) Russell provides a summary of how a step III grievance is handled by the Grievance Section of the Office of Legal Affairs. (*Id.* at 2-3.) Russell further testifies that "[he] caused a search of the database relevant to step III grievance appeals filed by the plaintiff and found that he has not filed the following grievance to the step III appeal process: SRF-2009-11 1713 12D1." (*Id.* at 3.)

Plaintiff, on the other hand, alleges that he filed a step III grievance appeal to the director's office on March 9, 2010, but has never received a response. (Dkt. 1, Compl., Ex. O; *see also* Pl's Resp. at 10.) Plaintiff attaches at Exhibit O, a grievance appeal form which he alleges to be the step III appeal that he mailed on March 9, 2010. (Dkt. 1, Compl., Ex. O.) The document is dated March 9, 2010, and the reason listed under reason for the step III appeal is "Step II Response unacceptable[.]" (*Id.*)

Under the reasoning of *Jones* and *Surles*, this Court concludes that there may exist a genuine issue of material fact as to whether Plaintiff exhausted his administrative remedies. The Court need

not decide the issue, however, because, as discussed below, there is an independent basis for McCauley's dismissal.

### C. Lack of Personal Involvement

Plaintiff's allegations regarding Defendant Susan McCauley focus on her position as the Health Unit Manager and her role in responding to Plaintiff's grievance at step I. The Complaint alleges that on December 7, 2009, Plaintiff received a grievance response from Defendant McCauley and M. Zamora that their investigation "reveal[ed] that [Plaintiff] had been seen by the medical provider on September 11, 2009 and a consult request was placed for an endocrinology follow up. On September 16, 2009, after review by the utilization review representatives, it was recommended to follow up and treat onsite as appropriate and the follow up was not approved." (Dkt. 1, Compl. at 5-6.) Plaintiff alleges that (based on this response) McCauley knew of and disregarded a substantial risk of serious harm to Plaintiff's health and safety when she delayed Plaintiff's follow-up treatment to see a endocrinology specialist. (*Id*. at 10.) Plaintiff also alleges that McCauley is personally liable because, as HUM, she is responsible for the operation of the health care clinic at Saginaw Correctional Facility, and because multi-nodular goiter and enlarged thyroid are serious medical needs, which mandate treatment. (*Id*.) With respect to McCauley's state of mind, Plaintiff alleges (again, based upon her knowledge of the step I grievance) that she knew of Plaintiff's serious medical needs, had knowledge of the necessary medical treatment, she also knew that Plaintiff was having pain when swallowing and breathing, and that Plaintiff's thyroid had gotten bigger. (*Id*.; *see also* Exs. K & L.) Plaintiff also alleges that McCauley knew that other medical issues could result from not being treated including heart problems, kidney problems, weight loss, weight gain,

9

cancerous conditions, or even death. (*Id*. at 10.) Plaintiff claims that instead of referring him to an outside endocrinologist, she disregarded the consultation requests of Dr. Joseph Burtch and Dr. Parveen Malik for Plaintiff to be seen by an outside endocrinologist. (*Id*. at 11.) Instead, McCauley agreed with Dr. Edelman who concluded that Plaintiff's condition could be treated onsite. (*Id*.) Therefore, claims Plaintiff, "intent can be inferred" where McCauley knew of and disregarded a substantial risk to Plaintiff's health and safety in the face of information that a reasonable person would know requires action.

McCauley's position as HUM does not make her liable for the decision not to send Plaintiff to an endocrinology expert. The law is well established that liability under Section 1983 must be based on more than merely the right to control employees. *Hays v. Jefferson*, 668 F.2d 869, 872 (6th Cir. 1982); *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). A claimed constitutional violation "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir.1998)). Supervisors are not liable under § 1983 merely because they are aware of an alleged violation and fail to act—this holds even if the omission is the "failure [to] remedy the ongoing effects of a constitutional violation." *King v. Zamiara*, No. 4:02-cv-141, 2009 WL 1067317, at *2 (W.D. Mich. Apr. 21, 2009) (citing *Shehee*, F.3d at 300); *see also Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) ( "[Plaintiff] merely alleged that [the MDOC director] failed to remedy the situation after he had been informed of the problem via [plaintiff's] grievance. [This] allegation does not state a claim because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory

personnel."); *Luttrell*, 199 F.3d at 300 (finding that supervisory defendants' failure to remedy the alleged retaliatory behavior was not actionable under § 1983). Thus, to the extent that Plaintiff's claim is against McCauley based on her supervisory role as the HUM, this rationale has been rejected as insufficient to state a constitutional claim. *See Hays*, 668 F.2d at 872; *Monell*, 436 U.S. at 658.

The law in this Circuit is equally well settled that liability can not be imposed against a supervisor for merely denying an administrative grievance. *See, e.g., Seaton v. Sova*, No. 08-1131, 2009 WL 2132728, at *9 (W.D. Mich. July 10, 2009) ("[Section] 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance."); *Alder v. Correctional Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003) (citing *Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2, 14 F. App'x 307, 309 (6th Cir. June 7, 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care.")); *see also Shehee*, 199 F.3d at 300 (the denial of an administrative grievance and the failure of a supervisor to remedy the conduct alleged in the grievance, without more, is not actionable as a matter of law). Lowe's allegations are additionally not actionable because there is no inherent constitutional right to an effective prison grievance procedure. *See Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *see also Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) (prisoner failed to state a claim because a prison official has no constitutional obligation to investigate a grievance) (citing *Levine v. Torvik*, 986 F.2d 1596, 1515 (6th Cir. 1993)). For all of these reasons, to the extent Lowe's Complaint is based upon McCauley's denial of his step I grievance, those claims should be dismissed.

**D.     Qualified Immunity**

McCauley further agues that she is entitled to qualified immunity. Qualified immunity shields state officials from suits based on their reasonable discretionary acts. *See Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); *Moldowan v. City of Warren*, 578 F.3d 351, 396 (6th Cir. 2009). In deciding whether an official is entitled to qualified immunity, a court asks two questions, in any order: (1) whether the plaintiff has shown that the official violated his constitutional rights, and (2) whether those rights were "clearly established" at the time the official acted. *Pearson*, 555 U.S. at 232, 236. Here, the Court has already concluded that there is no genuine dispute over facts material as to whether McCauley violated Plaintiff's Eighth Amendment rights and thus, it is not necessary to discuss the "clearly established" prong.

**V.     CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, this Court RECOMMENDS that Defendant McCauley's Motion for Summary Judgment be GRANTED and McCauley be DISMISSED.

**VI.    FILING OBJECTIONS TO THIS REPORT**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal

quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. See E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. See E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                    s/Laurie J. Michelson
                                    LAURIE J. MICHELSON
                                    UNITED STATES MAGISTRATE JUDGE

Dated: December 31, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 31, 2013.

                                    s/Jane Johnson
                                    Deputy Clerk