UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD LOWE,

    *Plaintiff*,

v.

PRISON HEALTH SERVICES,
and EDELMAN, DR.,

    *Defendants*.[1]

_____/

CASE NO. 4:13-CV-10058

DISTRICT JUDGE TERRENCE G. BERG
MAGISTRATE JUDGE PATRICIA MORRIS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Doc. 65)

**I.   RECOMMENDATION**

For the reasons presented below, **IT IS RECOMMENDED** that Defendants' motion to dismiss (Doc. 65) be **GRANTED.**

**II.   REPORT**

    **A.   Introduction**

Plaintiff Donald Lowe filed this *pro se* prisoner civil rights action under 42 U.S.C. § 1983 on January 8, 2013. (Doc. 1.) Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments by denying his requests to be treated by an outside medical specialist. (*Id.*)

---

[1] Defendant McCauley was terminated from the case on February 14, 2014 (Doc. 51) when the District Judge adopted then-Magistrate Judge Laurie Michelson's Report and Recommendation; however, since Plaintiff's objections were not received prior to the adoption, Plaintiff was given until August 8, 2014 to file his objections and he has done so. (Doc. 54.) Therefore, the status of Defendant McCauley remains at issue.

Plaintiff also alleges, as part of his constitutional claim, that Defendants breached their contract with the Michigan Department of Corrections ("MDOC"), which Defendants treat as a separate claim. (Doc. 1 at 7; Doc. 65 at 9.)

Defendants contend that they are entitled to summary judgment because Plaintiff was given appropriate medical treatment and Plaintiff's disagreement over the course of treatment does not state a constitutional claim, and that Plaintiff is not a third party beneficiary to the contract between Defendants and the MDOC and therefore cannot state a claim for breach of contract. (Doc. 65.) Plaintiff has responded (Doc. 72), Defendants replied (Doc. 73), Plaintiff filed a sur-reply (Doc. 74), and the Court granted his request to do so. (Doc. 76.) Therefore, the motion is ready for report and recommendation without oral argument. *See* E.D. Mich. LR 7.1(f)(1).

### B.     Standard of Review

A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has "'the initial burden of showing the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's

evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

    **C. Analysis and Conclusions**

    **1. Facts**

The facts are largely undisputed. Plaintiff alleges that in 2000, while housed at the Saginaw Correctional Facility ("SRF"), he had serious medical problems with a swollen neck, which led to difficultly swallowing. (Doc. 1 at 2.) Plaintiff kited to see the prison doctor about his neck and claims he was seen by Dr. Joseph Burtch. (*Id.* at 2.) In 2004, Plaintiff was transferred to the Robert Cotton Correctional Facility and, five months later, to the Mound Correctional Facility. (*Id.* at 2-3.) Upon his arrival at the Mound Correctional Facility, Plaintiff was seen by the prison doctor. (*Id.* at 3.) Plaintiff alleges that he "complained" for two-to-three years about his goiter and thyroid concerns, and that he needed to see an endocrinology specialist, "but to no avail." (*Id.*)

On July 18, 2008, Plaintiff was taken to the emergency room at Detroit Receiving Hospital where he was diagnosed as having an enlarged thyroid. (*Id.* at 3, Ex. B.) The discharge notes indicate a conversation with Dr. Middlebrook who indicated that the emergency room doctor "made it clear on the discharge instructions that [Plaintiff] needs endocrinology follow up, as well as ultrasound[,] [t]his will be able to be managed as an outpatient . . . This patient is being discharged." (*Id.* at 3-4, Ex. B.)

In March 2009, Seetha Vadlamudi, a medical provider at Mound Correctional Facility, requested that an endocrinologist examine Plaintiff's goiter. (Doc. 65, Ex A, ¶ 7.) The consultation request was granted that same month, and in April 2009 Plaintiff saw Dr. Ali Orandi at the Duane Waters Hospital in Jackson, Michigan. (Doc. 65, Ex. A ¶¶ 8-9.) After performing numerous tests (including a CT scan, blood tests, a thyroid stimulating hormone ("TSH") test, and an ultrasound), Dr. Orandi diagnosed Plaintiff with multi-nodular goiter, with a diffusely enlarged thyroid without dysphagia (difficulty

swallowing) or dysphonia (difficulty speaking). (Doc. 1 at 2; Doc. 65 at 11, Ex A, ¶ 9; Doc. 67 at 39-40.) Dr. Orandi recommended that Plaintiff receive a thyroid ultrasound and return for a follow-up. (Doc. 65 at 11, Ex. A, ¶ 9.) After Plaintiff returned to prison returned from the appointment, registered nurse Holly Smyth entered a progress note in his record, reflecting that Plaintiff stated, "They want to kill my thyroid. I've been going through this for 9 years. I don't know why they want to do it now. I just had these tests in 2008, too." (Doc. 65, Ex. A, ¶ 10.)

In May 2009, Dr. Orandi indicated that there was no need for another ultrasound, but that Plaintiff should undergo a thyroid uptake test. (Doc. 65 , Ex. A, ¶ 11.) The test occurred on June 17, 2009, and showed Plaintiff had thyroid enlargement with multiple nodules on both sides. (Doc. 65, Ex. A, ¶ 12.) Their next meeting was scheduled for July 8, 2009, but was rescheduled at Plaintiff's request so he could meet with his attorney that day. (Doc. 65, Ex. A, ¶ 13-14.) They met on July 22 instead and Dr. Orandi explained that the goiter could be treaded with thyroid medication or with radioactive iodine treatment. (Doc. 65, Ex. A ¶ 14.) Plaintiff did not want surgery or the iodine procedure, opting for a medical treatment instead; Dr. Orandi accordingly prescribed Tapazole and requested a follow-up within twelve weeks. (Doc. 65, Ex. A ¶¶ 14, 16.)

In August 2009, Plaintiff was transferred back to the SRF. (Doc. 65, Ex. A, ¶ 15.) The intake form notes that Plaintiff claimed he had a heart attack in 2007 while at Mound Correctional Facility due to a failure to receive medication. (*Id.*) The following month, Dr. Burtch submitted a consultation request that Plaintiff receive an evaluation for a follow-up with Dr. Orandi, since they had not yet scheduled that appointment. (Doc. 65,

Ex. A ¶ 16; Doc. 67 at 76-77.) Dr. Burtch recommended allowing offsite treatment with Dr. Orandi. (Doc. 1 at 4; Doc. 67 at 76.) The laboratory data at that point was normal. (Doc. 65, Ex. A ¶ 16.) A few days later, on September 16, Defendant Edelman denied the request for offsite treatment, instead deciding to treat Plaintiff onsite at SFR. (Doc. 1, Ex. F.) Edelman later explained that he made the decision based on Plaintiff's normal thyroid levels, his regular evaluations at SFR, his lack of symptoms, his relatively benign goiter, and SFR's ability to have him treated onsite by a general practice physician. (Doc. 65 at 13, Ex. A, ¶ 17.)

On January 28, 2010, Dr. Parveen Malik examined Plaintiff and described Plaintiff's diagnosis and the supporting history:

> Patient has a [history] of Bilateral Multinodular Goiter and was seen by Endocrinologist on July 22, 2009 at Duane Waters Hospital (DWH) clinic by Dr. Orandi, (Endocrinologist) and [follow-up] after 3 months was recommended. Patient was placed on Tapazole 5 Mg three times per week. Patient has been []taking that since that time and his Goiter size has not improved and [has] <u>gotten worse</u> recently. Now he is complaining of difficulty swallowing & breathing problems at night, laying on his back wakes him up choking.

(Doc. 1 at 4-5; Doc. 67 at 90.) (emphasis in original). After the appointment, Dr. Malik submitted a consultation request, seeking an appointment for Plaintiff with Dr. Orandi within four weeks. (Doc. 65, Ex. A, ¶ 19; Doc. 67 at 90-91.) That request was denied on February 4, 2010 by Dr. Harriet Squier. (Doc. 65, Ex. A, ¶ 20.) Rather than sending him back to Dr. Orandi, Dr. Squier sought information on why Dr. Orandi prescribed Tapazole when Plaintiff had normal thyroid conditions. (Doc. 67 at 92, 189.)

Plaintiff transferred to Cooper Street Correctional Facility ("JCS") in April 2010. (Doc. 65, Ex. A, ¶ 21; Doc. 67 at 100.) He continued to complain about his thyroid condition (Doc. 1 at 5, Ex. I), however, the endocrinology examination in May returned with normal results and he was not experiencing "thyroid storm" (Doc. 67 at 105-06), or serious conditions related to hyperthyroidism. (Doc. 65, Ex. A, ¶ 21.) In June 2010, Plaintiff told Dr. Mian Qayyum, that he was doing well, and he denied any neck pain; laboratory reports were consistent with this lack of symptoms, showing normal results. (Doc. 65 at 15, Ex. A, ¶ 23.) During the next month Plaintiff questioned whether he still needed Tapazole, as he lacked any symptoms of hyper- or hypo-thyroidism. (Doc. 65, Ex. A, ¶ 24; Doc. 67 at 120-23.)

He saw Dr. Oayyum again in August 2010, learning that he would not be referred to the endocrinologist but instead treated onsite. (Doc. 65, Ex. A, ¶ 25.) He did not exhibit obstructive problems and he continued to decline radiation treatment or surgery for his goiter. (*Id.*) His condition continued to improve the following month; his thyroid readings remained normal and his thyroid had shrunk.(Doc. 65, Ex. A, ¶ 26.) When the thyroid levels stayed normal into November, the Tapazole prescription was discontinued and regular check ups were scheduled to ensure his thyroid readings remained normal. (Doc. 65, Ex. A, ¶ 27.)

In December 2011, and March 2012, Plaintiff sent health care kites regarding his thyroid condition; specifically that he was having problems swallowing and breathing.[1] (Doc. 1 at 5, Ex. J; Doc. 65, Ex. A, ¶¶ 28-30.) Despite his requests, Plaintiff has

---

[1] The forms Plaintiff attaches are nearly illegible, but the dates match his allegations.

not seen endocrinology specialist Dr. Orandi since his July 22, 2009 visit. He did see nurses at JCS during this time, however, and they reminded him he was still receiving regular testing for his thyroid condition. (Doc. 65, Ex. A, ¶ 29.) In March 2013, still complaining of swallowing difficulties, Plaintiff was offered a barium test to examine his swallowing function, but he declined. (Doc. 67 at 179-80.)

### 2. Legal Standards

The Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment to the U.S. Constitution. The Court explained that "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

A violation of the Eighth Amendment can be "manifested by prison doctors and their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104. The inquiry is two-pronged, consisting of both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective inquiry asks whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298.

As the Supreme Court recognized in *Estelle*, differences in judgment between an inmate and prison medical personnel regarding appropriate medical treatment are insufficient to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*

### 3. Application and Analysis

In cases where, as here, an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain treatment decisions made by the staff, the inmate has failed to state a claim under the Eighth Amendment. *See McFarland v. Austin*, 196 F. App'x 410, 411 (6th Cir. 2006) (finding, "as the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Corr. Med. Servs.*, 94 F. App'x 262 (6th Cir. 2004) (finding that where the essence of the plaintiff's claims was that he disagreed with the defendants' approaches to his medical treatment, dismissal of complaint for failure to state a claim was affirmed); *Selby v. Martin*, 84 F. App'x

496, 499 (6th Cir. 2003) ("[T]he record reveals that [plaintiff] not only received a medical evaluation by a nurse and a physician, he also received instructions with regard to daily care of his abrasions. Thus, the record clearly reveals a competent and conscientious course of medical treatment, and [plaintiff's] dissatisfaction with his treatment does not state a claim under the Eighth Amendment."); *Westlake,* 537 F.2d at 860 n.5 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

The allegations in Plaintiff's complaint show that he was given offsite treatment and evaluation by an endocrinologist, Dr. Orandi, on several occasions, that he was regularly monitored by onsite medical personnel, and that his condition had not worsened according to laboratory and test results. Plaintiff's complaint is largely that he was not seen by the specialist of his choice. Although Plaintiff may disagree and contend that his condition was worsening, and even if this disagreement could, *arguendo*, form the basis of a cause of action for medical malpractice, I suggest that they do not rise to the level of deliberate indifference needed to establish an Eighth Amendment claim.

I therefore suggest that Plaintiff's allegations do not state a claim of deliberate indifference under the Eighth Amendment. *See Salem v. Yukins*, No. 04-72250, 2010 WL 456861, at *13-16 (E.D. Mich. Feb. 4, 2010) (granting summary judgment on Eighth Amendment claim where defendants denied plaintiff's requests to see an outside specialist because thyroid and osteoporosis issues were being addressed at

prison chronic care clinic); *Hartman v. Carroll*, 929 F. Supp. 2d 321, 328 (D. Del. 2013) (granting summary judgment on Eighth Amendment claim where "plaintiff received medical care for his throat complaints and thyroid condition"). Accordingly, I suggest that Defendants' motion for summary judgment be granted.

To the extent that Plaintiff has alleged a separate cause of action for breach of contract, such a claim is a state law claim that cannot be redressed under 42 U.S.C. § 1983. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). If Plaintiff were to request that the court exercise its supplemental jurisdiction over such a claim, I recommend that the court decline to do so, and instead dismiss this claim without prejudice. *Langefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

### D. Conclusion

For all the reasons stated above, I suggest that Defendants' Motion be **GRANTED.**

### III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are

advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 7, 2015                         /S PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge


### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Donald Lowe #172332 at Central Michigan Correctional Facility, 320 N. Hubbard, St. Louis, MI 48880.

Date: April 7, 2015                          By s/Kristen Krawczyk
                                             Case Manager to Magistrate Judge Morris