UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD LOWE,

       Plaintiff,

v.                              Case No. 13-10058

                                   HON. TERRENCE G. BERG
PRISON HEALTH SERVICE, INC. *et al.,*   HON. PATRICIA T. MORRIS

       Defendants.

_____/

**ORDER ADOPTING REPORT AND
RECOMMENDATION (DKT. 77) AND GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 65)**

Plaintiff Donald Lowe ("Plaintiff") is a prisoner in the custody of the

Michigan Department of Corrections. On January 8, 2013, Plaintiff filed a pro se

complaint (Dkt. 1) against Defendants Prison Health Services, Inc. (PHS) and Dr.

Adam Edelman, PHS's "medical director for utilization management" (collectively

"Defendants").  Plaintiff alleges that Defendants were deliberately indifferent to his

serious medical needs, in violation of the Eighth Amendment's proscription of cruel

and usual punishment, by denying his requests to continue to have his thyroid

condition treated by an outside medical specialist (*Id.*).

On October 31, 2014, Defendants filed a motion for summary judgment. On

April 7, 2015, Magistrate Judge Patricia Morris issued a report (Dkt. 77)

recommending that Defendants' motion for summary judgment be granted.

Magistrate Judge Morris based her decision on the fact that Plaintiff had received

medical attention, including referrals to an outside specialist, and that Plaintiff's claims amounted to a disagreement with the prison doctors' treatment decisions. Accordingly, Magistrate Judge Morris concluded that Plaintiff had not established a prima facie case of deliberate indifference under the Eighth Amendment, and Defendants were consequently entitled to summary judgment.

Plaintiff filed lengthy objections, over 40 pages, (Dkt. 80) to Magistrate Judge Morris's report and recommendation. Plaintiff organizes his objections into three sections, but none of the three is particularly distinct in content and nearly all statements and arguments made by Plaintiff in each objection can be found in the other two. Broadly speaking, Plaintiff's three objections may be summarized as follows: (1) that the facts in the Report and Recommendation are "overwhelmingly in dispute, leaving out additional facts and evidence, of ongoing deliberate indifference" (Dkt. 80, p. 3), and then Plaintiff repeats the allegations contained in his Complaint and the argument contained in his response to Defendants' motion for summary judgment; (2) that Magistrate Judge Morris "failed in the Report and Recommendation to distinguish, not only the two individual defendants, Dr. Adam Edelman and Prison Health Service, but also failed to distinguish and separate the two individual claims and cause of action against the two separate defendants, Dr. Edelman and Prison Health Service. Magistrate Judge [Morris] failed to set forth facts as to either defendant showing that there is no dispute of material facts, or that there is no genuine issues for trial [sic]" (Dkt. 80, p. 10); and (3) that the arguments contained in his objections 1 and 2 are meritorious enough to bear

2

repeating, and that Plaintiff strongly objects to the Magistrate Judge's conclusion that "[P]laintiff received medical attention and is, in essence, filing suit because he disagrees with certain treatment made by staff" (*Id.*, p. 13-14).

## I. FACTUAL BACKGROUND

The facts of this case have been recited in prior orders (Dkts. 47, 51), and were accurately stated in Magistrate Judge Morris's report and recommendation (Dkt. 77). They are summarized as follows. Plaintiff alleges that in 2000 he had serious medical problems with a swollen neck, which led to difficulty swallowing (Dkt. 1, Compl. at 2). Plaintiff "kited" (sent a formal request through prison channels) to see the prison doctor about his neck and was seen by Dr. Joseph Burtch[1] (*Id.*). Upon examination, Dr. Burtch placed a consultation request referral into Defendant PHS for Plaintiff to see an outside specialist (*Id.*). This consultation request was granted and Plaintiff saw Dr. Orandi – an endocrinologist – at the Duane Waters Hospital in Jackson, Michigan (*Id.*). After performing numerous tests (including a CT scan, blood tests, thyroid stimulating hormone (TSH) test, and an ultrasound), Dr. Orandi diagnosed Plaintiff with multi-nodular goiter, with a diffusely enlarged thyroid (*Id.*). At this time, Dr. Orandi also noted that Plaintiff did not exhibit dysphagia (difficulty swallowing) or dysphonia (difficulty speaking) (Dkt. 65, Ex. A, Edelman Affidavit ¶ 9). In other words, Dr. Orandi found that, although Plaintiff's thyroid was enlarged, there was no obstructive phenomenon (*Id.*).

---

[1] Dr. Orandi is the only off-site specialist Plaintiff saw for his thyroid. The other doctors and nurses referred to in this opinion are prison health care providers.

In 2004, Plaintiff was transferred to the Robert Cotton Correctional Facility and, five months later, to the Mound Correctional Facility (*Id*. at 2–3). Upon his arrival at the Mound Correctional Facility, Plaintiff was seen by the prison doctor there (*Id*. at 3). Plaintiff alleges that he "complained" for two-to-three years about his goiter and thyroid concerns, and that he needed to see an endocrinology specialist, "but to no avail" (*Id*.).

On July 18, 2008, Plaintiff was taken to the emergency room at Detroit Receiving Hospital where he was diagnosed as having an enlarged thyroid (*Id*. at 3). The discharge notes indicate a conversation with Dr. Middlebrook who indicated that if the emergency room doctor "made it clear on the discharge instructions that [Plaintiff] needs endocrinology follow up, as well as ultrasound[,][t]his will be able to be managed as an outpatient ... This patient is being discharged" (*Id*. at 3–4).

Plaintiff was then transferred from the Mound Correctional Facility to the Brooks Correctional Facility (*Id*. at 4). On June 17, 2009, Plaintiff received an offsite thyroid uptake scan at Mercy Hospital in Muskegon Michigan (Dkt. 65, Ex. A ¶12). The report on the thyroid uptake scan stated that Plaintiff had generalized thyroid enlargement with multiple nodules bilaterally (*Id*.). However, the results also indicated that his thyroid uptake results were "barely in the hyperthyroid range" (*Id*.).

A progress note dated July 8, 2009 reflects that Plaintiff was scheduled for a follow up appointment with Dr. Orandi on that date. The appointment was cancelled by Plaintiff, as he had an attorney visit scheduled for that day (*Id*. ¶13).

4

Plaintiff's follow up visit with Dr. Orandi was re-scheduled for July 22, 2009 (*Id.* ¶14). At that visit, the consultation note reflects that Dr. Orandi explained that Plaintiff's goiter could be treated either medically (with thyroid medication) or with radioactive iodine treatment (*Id.*). Plaintiff stated he preferred using oral medication, and Dr. Orandi prescribed 5 mg of Tapazole three days a week with follow up lab tests (*Id.*).

On August 20, 2009, Plaintiff was transferred to Saginaw Correctional Facility (*Id.* ¶15). On September 11, 2009, a consultation request was submitted by Dr. Burtch requesting that Plaintiff be evaluated for a follow-up visit with Dr. Orandi based on the recommendation that Plaintiff be seen within 12 weeks of his July, 2009 visit (*Id.* ¶16). The lab data at that time reflected that Plaintiff's thyroid levels were normal (*Id.*). On September 16, 2009, Defendant Dr. Edelman denied the request to see Dr. Orandi for a third time, indicating that Plaintiff would be treated onsite as appropriate (*Id.*). Dr. Edelman's reasoning was that Plaintiff's thyroid levels were within normal range; his thyroid levels were being regularly evaluated; he exhibited no symptoms that required an offsite visit; his goiter condition was relatively benign; and his condition could be easily treated by an onsite general practicing physician (*Id.*).

On January 28, 2010, Plaintiff submitted a health care kite that he was having problems breathing and swallowing food due to his thyroid problem; he was seen by a prison doctor the same day. After being examined by Dr. Malik, Plaintiff made a second consultation request to PHS to see Dr. Orandi, within four weeks

5

(Dkt. 1, Compl. at 4). Dr. Malik described signs and symptoms of Plaintiff's

diagnosis and supporting history:

> Patient has a [history] of Bilateral Multinodular Goiter and was seen by
> Endocrinologist on July 22, 2009 at Duane Waters Hospital (DWH) clinic by
> Dr. Orandi, (Endocrinologist) and [follow-up] after 3 months was
> recommended. Patient was placed on Tapazole 5 Mg three times per week.
> Patient has been [ ]taking that since that time and his Goiter size has not
> improved and gotten worse recently. Now he is complaining of difficulty
> swallowing & breathing problems at night, laying on his back wakes him up
> choking (Dkt. 1, Compl. at 4–5).

On February 4, 2010, Dr. Harriet Squier reviewed the January 28, 2010

consultation request and requested further information about the Tapazole

prescription, as Plaintiff was then "euthyroid" (i.e. had normal thyroid function) (*Id.*

¶20).

In April 2010, Plaintiff was transferred to Cooper Street Correctional

Facility (*Id.*, ¶21). On May 12, 2010, Plaintiff was seen by Chin Yi, N.P. (*Id.*). Nurse

Yi reported that Plaintiff, at this time, had normal thyroid readings and was

currently euthyroid (*Id.*). Thus, Defendant PHS denied the consultation request to

see Dr. Orandi (*Id.*; *see also* Ex. H, PHS Denial).

On June 2, 2010, Plaintiff was seen by Dr. Mian Qayyum (*Id.* ¶22). Dr.

Qayyum reported that Plaintiff stated he was doing well and believed that the size

of his goiter may have decreased (*Id.*). Plaintiff denied any neck pain, and no other

symptoms were reported (*Id.*). The most recent lab tests continued to show

Plaintiff's thyroid readings as normal (*Id.*).

On June 12, 2010, Plaintiff was seen for a follow up visit with Dr. Qayyum for

his goiter and thyroid condition (*Id.* ¶23). Plaintiff stated that he was not

experiencing any difficulty breathing or swallowing (*Id.*). Plaintiff further reported that since he has been on Tapazole he believed the right lobe of his thyroid had receded in size (*Id.*). He was compliant with his medications and denied any side effects, and thyroid level readings continued to be normal (*Id.*).

On August 2, 2010, Plaintiff was seen by Dr. Qayyum as follow up for his thyroid condition (*Id.* ¶25). Dr. Qayyum noted that Plaintiff continued to decline consideration of radiation treatment or surgery as treatment for his goiter (*Id.*). Dr. Qayyum observed that Plaintiff was not exhibiting any obstructive symptoms (i.e. difficulty breathing or swallowing) (*Id.*). Based on these observations, Plaintiff was informed that he would not be re-referred to the endocrinology clinic and would instead be followed at the on-site prison clinic (*Id.*).

On September 13, 2010, Plaintiff was seen by again Dr. Qayyum (*Id.* ¶26). His thyroid readings continued to be normal (*Id.*). The right lobe of Plaintiff's thyroid had reduced in size and he did not exhibit any compressive symptoms (*Id.*).

On November 23, 2010, Plaintiff was seen by Dr. Milliner (*Id.* ¶27). Based on Plaintiff's continued normal thyroid levels, his Tapezole prescription was discontinued (*Id.*). Dr. Milliner ordered that Plaintiff's thyroid levels be rechecked periodically to assure that he stayed euthyroid (*Id.*).

The medical records then contain approximately a one-year gap in their discussion of Plaintiff's thyroid. He did see various medical providers during this time, but primarily concern numbness and tingling in Plaintiff's left arm, shoulder and cervical neck pain. In other words, conditions unrelated to this thyroid.

7

The next reference to Plaintiff's thyroid condition is dated December 9, 2011, when a clinical progress note was entered by Barbara Miller, R.N. stating that Plaintiff was evaluated for a health care kite in which he stated he could not breathe or swallow food (*Id*. ¶28). Plaintiff presented with no apparent distress, so Nurse Miller asked him if he was still experiencing these symptoms (*Id*.). The records indicate that, "he just wanted to see a specialist about his thyroid; nodules on his thyroid made him feel as if he couldn't swallow food or breathe when in fact he is able to do both" (*Id*.).  There is no significant mention of Plaintiff's thyroid condition in the medical records before the Court throughout 2012.  There are records indicating that Plaintiff received treatment for neck, shoulder and foot pain, as well as hypertension, but no complaints relating to his thyroid condition.

On February 28, 2013 Plaintiff complained of difficulty swallowing and heavy breathing, and was seen by Ryan Mallo, N.P. (Dkt. 67 at 173).  Plaintiff stated "when am I going to get the treatment I need for my goiter," but Nurse Mallo reminded Plaintiff that he was regularly have lab testing done for this condition (*Id*.).  The records indicate that Plaintiff then became "argumentative and abrasive," and was asked to leave (*Id*.).  Nurse Mallo did, however, order more lab tests and instructed Plaintiff to send a medical kite if his condition became acute or urgent (*Id*.).

On March 12, 2013, based on Plaintiff's complaints of trouble swallowing and some trouble breathing, Ronald Mingle, P.A. submitted a consultation request

for a repeat ultrasound of the thyroid (*Id*. at 180).  After review of the consultation request, Dr. Harriet Squier recommended that Plaintiff be evaluated with a barium swallow to determine the cause of any difficulties swallowing (*Id*. ¶31). Plaintiff refused the barium swallow test, but the records indicate that he would send a medical kite if he changed his mind (*Id*.).

## III. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir.2005).

Under Rule 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1).

### B. Deliberate Indifference

In the context of medical care, a prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated only when the prisoner can demonstrate a "deliberate indifference" to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (citations omitted). Moreover, mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 106.

A viable Eighth Amendment claim has two components, one objective and the other subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful

10

enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Farmer*, 511 U.S. at 834. To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id*. at 837. In other words, this prong is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (citing *Farmer*, 511 U.S. at 839–40). "Basically, there must be a knowing failure or refusal to provide urgently needed medical care which

11

causes a residual injury that could have been prevented with timely attention." *Lewis v. Corr. Med. Servs.*, 2009 WL 799249, at \*2 (E.D. Mich. Mar. 24, 2009).

Regarding claims against a medical provider, in cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain treatment decisions made by the medical staff, the plaintiff fails to state a claim under the Eighth Amendment. *See McFarland v. Austin*, 196 Fed. App'x. 410, 411 (6th Cir. 2006) ( "as the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Corr. Med. Servs., Inc.*, 94 Fed. App'x. 262, 264 (6th Cir. 2004) (affirming dismissal of the complaint for failure to state a claim where the essence of plaintiff's claims was that he disagreed with the defendants' approaches to his medical treatment where defendant discontinued the plaintiff's previous course of treatment and prescribed what the plaintiff considered to be less effective treatment); *Catanzaro v. Michigan Dep't of Corr.*, 2010 WL 1657872, at \*3 (E.D. Mich. 2010) (the plaintiff failed to state a claim of deliberate indifference when "he specifically alleges that he was given medications that proved ineffective to relieve his symptoms, rather than medications that he believed were more effective, such as Drixoral, Sudafed and Deconamine"), adopted by 2010 WL 1657690 (E.D. Mich. 2010); *Allison v. Martin*, 2009 WL 2885088, at \*7 (E.D. Mich. 2009) (the plaintiff failed to state a claim of deliberate indifference in violation of

12

the Eighth Amendment when the complaint reveals the plaintiff was seen over a dozen times for his eczema and was given medication, though not the "type" and quantity he requested).

Defendants' brief assumes, for purposes of the motion for summary judgment, that Plaintiff's thyroid disorder is a serious medical condition and thus primarily maintains that Plaintiff has failed to satisfy the subjective component of the deliberate indifference test. That is, even if Plaintiff can satisfy the objective prong of the deliberate indifference test, the second element of *Wilson* requires a showing that Defendants acted with deliberate indifference, which Plaintiff has not done. "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent in the form of "malicious" or "sadistic" action. *Farmer v. Brennan*, 511 U.S. 825, 861 (1994); *see also Estelle*, 429 U.S. at 105–06 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment; "medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference.").

13

As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983. *Estelle v. Gamble, supra*; *Byrd v. Wilson*, 701 F.2d at 595 n. 2. A delay in access to medical attention, however, can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (6th Cir. 1994), quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam ). Further, a claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860–61 (6th Cir. 1976). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992). The deliberate indifference standard requires knowledge of the particular medical condition in order to establish an intent ("a sufficiently culpable state of mind," *Wilson*, 501 U.S. at 298) to deny or to delay purposely "access to medical care" or intentionally to interfere "with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. Thus, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn ex rel. Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

14

Plaintiff claims that Defendants were deliberately indifferent because they refused to refer him to an off-site specialist for a third consultation. In the view of Magistrate Judge Morris, these facts merely presented a difference of medical opinion, which does not generally fall within the scope of an Eighth Amendment claim. *See Thomas v. Coble*, 55 Fed. App'x. 748, 749 (6th Cir. 2003) ("[Plaintiff] and Dr. Coble clearly disagreed over the preferred medication to treat at [Plaintiff's] pain. However, this difference of opinion does not support an Eighth Amendment claim."); *see also Cuco v. Fed. Med. Center–Lexington*, 2006 WL 1635668, *33 (E.D. Ky. 2006) (The fact that the plaintiff's personal physician believed that the treatment chosen by prison medical personnel was not an effective treatment regimen does not matter. That is, even where a plaintiff's private physician recommends a course of treatment for the plaintiff's condition, a prison doctor's use of a different treatment regimen does not amount to deliberate indifference).

Given that the facts in this case clearly show that the Plaintiff received consistent and attentive medical treatment for his thyroid, though not by the specialist that he requested, this Court agrees with Magistrate Judge Morris's recommended decision. Magistrate Judge Morris correctly concluded that Defendants were exercising their professional medical judgment in determining how and when to treat Plaintiff; they did not ignore his complaints, they provided medical treatment. Thus, Defendants were not deliberately indifferent to Plaintiff's thyroid condition. Plaintiff's objections, which largely just reiterate the arguments he made in response to Defendants' motion for summary judgment, but fail to point

15

out any flaw in Magistrate Judge Morris's reasoning, do not alter the fact that Plaintiff has failed to show deliberate indifference and that Defendants are entitled to summary judgment.

To review the record, in 2009, based on his report of difficulty swallowing, Plaintiff was approved for an outside consultation with an endocrinologist. The endocrinologist confirmed Plaintiff's diagnosis of an enlarged thyroid and reported that Plaintiff did not (at that time) suffer from difficulty swallowing or speaking and had no obstructive phenomena (Dkt. 65, Ex. A, ¶9). After receiving multiple tests on his thyroid, Plaintiff was seen for a follow up visit with the endocrinologist who, after Plaintiff stated he did not want surgery or radioactive iodine treatment on his thyroid, prescribed appropriate medications (*Id*. ¶14). At that visit, the endocrinologist recommended a three-month follow-up visit (*Id*.).

Based on the fact that Plaintiff's thyroid levels were within normal range; his thyroid levels were being regularly evaluated by prison medical staff; he exhibited no symptoms that required an offsite visit; his thyroid condition was relatively benign and his condition could be treated by an onsite general practicing physician, Defendant Dr. Edelman did not approve a third visit to the endocrinologist. On the facts presented here, this decision does not appear to be unreasonable, and clearly does not amount to criminal recklessness. Dr. Edelman concluded that Plaintiff should continue to be seen by medical professionals on site for treatment of his thyroid condition. This single denial of a third request to be seen by a specialist was Dr. Edelman's only apparent involvement in Plaintiff's medical care.

16

Plaintiff argues in his objections to Magistrate Judge Morris's report and recommendation that, over a period of many years, he has repeatedly complained of difficulty swallowing and difficulty breathing.  While the record includes some of these complaints, the medical records before the Court show that these symptoms have not been always been observed or confirmed in clinical examinations. Indeed, multiple examinations revealed "no obstructive phenomena" and "no compressive symptoms" (*Id.* ¶¶22, 23, 25, 26).  Furthermore, the medical records show that Plaintiff declined being evaluated for surgery, which Dr. Orandi indicated is the recommended treatment if a goiter is blocking the airway or esophagus (*Id.* ¶32). There are also indications in the medical records before the Court that Plaintiff reported that he believed his goiter was decreasing in size and that he did not suffer any obstructive symptoms (*Id.* ¶¶22, 23, 25, 26).

Perhaps most notably, the medical records indicate that Plaintiff chose not to take a barium swallow test that could have conclusively determined if he suffered from any obstructive symptoms related to his goiter (*Id.* ¶26). In sum, the medical records reflect that Plaintiff was appropriately and consistently treated on site and that his complaints of breathing or swallowing difficulties were regularly evaluated by prison medical providers and, where necessary, by an outside specialist. There is insufficient evidence in the record before that Court to raise a genuine issue of material fact that Defendants, or any other medical provider, acted with the necessary state of mind, more than negligence and less than intent, to constitute deliberate indifference to Plaintiff's serious medical needs when they declined to

17

approve a third off-site evaluation of his goiter.  Indeed, on this record, it there is insufficient evidence to show that the medical professionals' actions were negligent. As such, the Court finds that Magistrate Judge Morris correctly recommended that Defendants' motion for summary judgment should be granted, and this recommendation will therefore be adopted and the objections thereto overruled.

## IV.  CONCLUSION

For the reasons set forth above, Magistrate Judge Morris's April 7, 2015 report and recommendation (Dkt. 77) is **ACCEPTED AND ADOPTED** as the Court's findings of fact and conclusions of law.  Plaintiff's objections (Dkt. 80) to the report and recommendation are **OVERRULED**.  Accordingly, Defendants' motion for summary judgment (Dkt. 65) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  September 28, 2015


## Certificate of Service

I hereby certify that this Order was electronically submitted on September 28, 2015, using the CM/ECF system, which will send notification to each party.


s/A. Chubb
Case Manager